IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ERIC LEWIS,**            Case Number 4:17 CV 642

    Petitioner,            Judge Donald C. Nugent

    v.            Magistrate Judge James R. Knepp, II

**WARDEN CHARMAINE BRACY,**

    Respondent.            REPORT AND RECOMMENDATION

### INTRODUCTION

*Pro se* Petitioner Eric Lewis ("Petitioner"), a prisoner currently in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") (Doc. 1). Respondent Warden Charmaine Bracy[1] ("Respondent") filed a Motion to Dismiss. (Doc. 7). After Petitioner failed to respond, the undersigned issued a show cause order. (Doc. 8). Petitioner then requested, and the undersigned granted, a motion for extension of time to file a response. (Docs. 9, 10).[2] Although no such response was filed, in a January 4, 2018 objection to the undersigned's order denying Petitioner's motion for appointment of counsel, Petitioner presents some argument in opposition to the Motion to Dismiss. (Doc. 13). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated April 18, 2017). For the reasons discussed below, the undersigned recommends the Motion to Dismiss (Doc. 7) be granted.

---

1. Petitioner has subsequently been transferred to Warren Correctional Institution, where the Warden is Chae Harris. *See* Doc. 9.
2. Petitioner was granted until January 1, 2018, to file his response. (Doc. 10, at 2).

**PROCEDURAL BACKGROUND**

State Conviction

In November 2006, a Mahoning County Court of Common Pleas Grand Jury indicted Petitioner (with two co-defendants) on one count of aggravated murder in violation of Ohio Revised Code § 2903.01(A)(F), with a firearm specification in violation of § 2941.145(A). (Ex. 1, Doc. 7-1, at 4-5). Petitioner pleaded not guilty. (Ex. 2, Doc. 7-1, at 6). On October 19, 2007, a jury found Petitioner not guilty of aggravated murder, but guilty of complicity to commit aggravated murder, along with the firearm specification. (Ex. 3, Doc. 7-1, at 7). Petitioner, through counsel, subsequently filed a motion for acquittal, and motion for new trial. (Exs. 4-5, Doc. 7-1, at 8-11). The court overruled both motions. (Ex. 6, Doc. 7-1, at 12). On October 26, 2007, the trial court imposed a sentence of life imprisonment with parole eligibility after 30 years, and a consecutive sentence of three years for the firearm specification. (Ex. 7, Doc. 7-1, at 13-14).

Direct Appeal

Petitioner's trial counsel filed a notice of appeal on Plaintiff's behalf on November 5, 2007. (Ex. 8, Doc. 7-1, at 15-17). The trial court then appointed Attorney Douglas King to represent Petitioner on appeal. *See* Ex. 30, Doc. 7-1, at 93 (trial court docket entry dated November 5, 2007: "JE> A[ttorney] Douglas King is hereby appointed for the appeal process") (capitalization altered). The docket sheet for the appellate court contains an entry on November 28, 2007 noting, *inter alia*, "Request for substitute counsel on appeal is sustained. A[ttorney] Jennifer McLaughlin is appointed as counsel to assist D[efendant]-Appellant in his appeal." (Ex. 31, Doc. 7-1, at 97) (capitalization altered).

On June 9, 2008, Attorney McLaughlin filed a motion to withdraw, noting she had recently obtained a position in the Mahoning County Prosecutor's office and continuing to represent Petitioner would represent a conflict of interest. (Ex. 9, Doc. 7-1, at 18-19). The appellate court

granted the motion to withdraw, and appointed Gary L. Van Brocklin as substitute counsel. (Ex. 10, Doc. 7-1, at 20).

On December 10, 2008, Attorney Van Brocklin filed a motion to withdraw, stating he had reviewed the record and found "no arguable error". (Ex. 11, Doc. 7-1, at 21). In an attached memorandum, he noted a potential trial court error regarding the accomplice jury instruction. *Id.* at 23. He noted the "only possible issue for appeal" related to the jury charge and that it "does not rise to a prejudicial error", and cited *Anders v. California*, 386 U.S. 738 (1967)[3]. *Id.* at 24.[4]

On December 23, 2008, the appellate court construed Attorney Van Brocklin's motion "as a no merit brief in accordance with *State v. Toney* (1970), 23 Ohio App. 2d 203". (Ex. 12, Doc. 7-1, at 25).[5] The appellate court gave Petitioner 30 days to file a *pro se* brief "raising any claims of error he chooses." *Id.* On January 22, 2009, Petitioner filed a *pro se* "Motion for Appointment of Counsel and Transcript at State's Expense" and motion for a 60 day extension of time to file his brief. (Exs. 13-14, Doc. 7-1, at 26-27). On February 11, 2009, the appellate court overruled Petitioner's motions for counsel and transcripts, but granted him an additional 30 days to file his *pro se* brief. (Ex. 15, Doc. 7-1, at 28). The record reflects Petitioner never filed such a brief. *See* Ex. 31, Doc. 7-1, at 103 (appellate docket sheet). On September 22, 2009, the appellate court granted Attorney Van Brocklin's motion to withdraw, and affirmed the judgment of the trial court. (Ex. 16, Doc. 7-1, at 29-44); *see also State v. Lewis*, 2009 WL 3068771 (Ohio Ct. App.). In so doing, the appellate court addressed the jury charge issue raised by Attorney Van Brocklin. *See*

---

3. An "*Anders* brief" is a brief filed by a criminal defendant's attorney who wishes to withdraw from the case on appeal based on the belief that the appeal is frivolous. *See Anders v. California*, 386 U.S. 738 (1967). According to *Anders*, the brief must raise all possible arguable issues for appeal in order to fulfill the requirement that counsel be an "active advocate" for his or her client. *Id.*
4. A certificate of service at the end of this motion indicates it was mailed to Petitioner. *See* Ex. 11, Doc. 7-1, at 21.
5. *State v. Toney*, 23 Ohio App. 2d 203 (1970), is the Ohio state court version of *Anders v. California*, 386 U.S. 738 (1967).

*Lewis*, 2009 WL 3068771, at *4-7. Petitioner did not seek further discretionary review to the Ohio Supreme Court.

Motion for Transcripts

Over five years later, on July 9, 2015, Petitioner filed a *pro se* motion for transcripts. *See* Ex. 30, Doc. 7-1, at 95 (trial court docket sheet). The trial court denied that motion. (Ex. 17, Doc. 7-1, at 45). Petitioner filed a notice of appeal to contest the denial. (Ex. 18, Doc. 7-1, at 46-47). The State filed a motion to dismiss the appeal for lack of a final, appealable order. (Ex. 19, Doc. 7-1, at 48-51). The appellate court dismissed the appeal *sua sponte* because it did not appeal a "final order" as defined by Ohio law. (Ex. 20, Doc. 7-1, at 52).

Application for Reopening

On February 25, 2016, Petitioner filed a motion to reopen his direct appeal under Ohio Appellate Rule 26(B). (Ex. 21, Doc. 7-1, at 53-61). The State opposed (Ex. 22, Doc. 7-1, at 62-69), and Petitioner replied (Ex. 23, Doc. 7-1, at 70-71). On March 10, 2016, the state appellate court denied Plaintiff's motion to reopen as untimely filed, and, alternatively, on the merits. (Ex. 24, Doc. 7-1, at 72). Petitioner then filed a "Motion for Delayed Reconsideration Pursuant to App.R. 26(A)" (Ex. 25, Doc. 7-1, at 73-77), which the appellate court overruled on May 26, 2016 (Ex. 26, Doc. 7-1, at 78). Petitioner filed a Notice of Appeal to the Ohio Supreme Court (Ex. 27, Doc. 7-1, at 79), and a motion for leave to file a delayed appeal (Ex. 28, Doc. 7-1, at 81-84). In his motion for leave, Petitioner asserted his delay was due to an inadvertent failure to include the judgment entry from the appellate court decision. *Id.* at 82; *see also id.* at 84 ("I neglected to include the Judgment Entry form the Seventh District Court."). On September 14, 2016, the Ohio Supreme Court denied Petitioner's motion for delayed appeal and dismissed his case. (Ex. 29, Doc. 7-1, at 86).

4

**FEDERAL HABEAS CORPUS**

Petitioner, *pro se*, executed the pending Petition on March 24, 2017, and it was filed on March 27, 2017. (Doc. 1).[6] In the Petition, he raises a single ground for relief:

| | |
|---|---|
| **GROUND ONE:** | Petitioner was denied his rights to Due Process under the Sixth and Fourteenth Amendments to the U.S. Constitution when the Ohio Seventh District Court of Appeals dismissed his App.R. 26(B) Application for reopening, which effectively denied his opportunity to receive a full and fair appeal of his conviction, as provided for by the Ohio Constitution. |
| **Supporting facts:** | After being convicted of complicity to aggravated murder, Petitioner filed a timely Notice of Appeal through his trial counsel. Petitioner was appointed Attorney Douglas King as his appellate counsel on November 5, 2007. However, no appellate brief was ever filed by King. Instead, nearly two years later, King filed a motion to withdraw as Petitioner's counsel. The motion was granted on September 22, 2009 and on that same day the Seventh District Court of Appeals rendered a decision to affirm the trial court's judgment. Petitioner was never informed that King was filing a motion to withdraw as appellate counsel, nor that the motion was granted – nor of the appellate court's decision to affirm the trial court's judgment. Because he was not informed in a timely manner of the foregoing, he was not provided the opportunity at that time to file a *pro se* appellate brief. In late 2015 Petitioner requested from the clerk of courts copies of the appellate court's decisions above and for the first time finally received them. Petitioner subsequently filed an App.R. 26(B) Application for Reopening in February of 2016, asking the appellate court to reopen his appeal and to provide him the opportunity to file a *pro se* appellate brief. The application was denied by the appellate court. |

(Doc. 1, at 4). Respondent moved to dismiss the Petition as untimely filed. (Doc. 7). Petitioner requested (Doc. 9), and was granted (Doc. 10) an extension of time to file a response, but did not do so within the time allotted.

---

6. Pursuant to the prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)).

5

**DISCUSSION**

Respondent moves to dismiss, alleging the Petition is barred by the applicable statute of limitations, and Petitioner cannot show statutory or equitable tolling. *See* Doc. 7. In an objection to the denial of appointment of counsel, Petitioner asserts:

> Next, Mr. Lewis objects to his petition may be timely via brief review. Mr. Lewis can me[e]t the cause and prejudice prongs if needed to allow this case to move forward. Mr. Lewis has claims that can be amended also. In short, Mr. Lewis has meritorious claims. The issue at hand becomes complex if Mr. Lewis is being denied access to the court.

(Doc. 13, at 2). For the reasons discussed below, the undersigned recommends the Petition be dismissed.

Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a one-year limitations period for habeas petitions brought by individuals challenging their state court convictions. 28 U.S.C. § 2244(d). Under 28 U.S.C. § 2244(d)(1), the limitations period begins to run from the latest of four events:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*§ 2244(d)(1)(A)*

Cases become final for purposes of § 2244(d)(1)(A) when the time to file an appeal has expired. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). Here, Petitioner's conviction became final on November 6, 2009—the expiration of the 45-day time period for filing an appeal of the Seventh District Court of Appeals' September 22, 2009 decision to the Ohio Supreme Court. Former Ohio S. Ct. Prac. R. II, § 2(A)(1)(a). *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459-60 (6th Cir. 2012) (citing *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2011)). The statute of limitations on claims related to that conviction began running the following day—November 7, 2009—and expired one year later, on November 7, 2010, absent tolling. The Petition, dated March 24, 2017, is therefore time-barred under § 2244(d)(1)(A) unless tolling applies.[7]

*§ 2244(d)(1)(D)*

If § 2244(d)(1)(D) applies, the state of limitations on a habeas petition begins running on "the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence." Construing Petitioner's argument liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), it appears he is arguing he was not informed of any actions during his appeal, including the appellate court's decision to affirm the trial court's judgment. *See* Doc. 1, at 4. Under § 2244(d)(1)(D), however, Petitioner "must show that he could not have discovered the factual predicate for his habeas claim earlier through the exercise of due diligence." *Bey v. Capello*, 525 F. App'x 405, 408 (6th Cir. 2013) (citing *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006));

---

7. Because Petitioner is *pro se*, the Petition will be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers"); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).

*see also Shorter v. Richard*, 659 F. App'x 227, 232 (6th Cir. 2016) ("In this case, Petitioner's sentencing—at which the district court failed to notify him of his appellate rights under Ohio law—triggered the duty of due diligence. Petitioner has given no explanation for the five-year delay in filing a Rule 5(A) motion, and has not mentioned anything he did to inquire about his potential appellate rights—after receiving the 2008 letter from his lawyer in mentioning the possibility of an appeal—save attach an affidavit that he first learned of the possibility of appeal in 2013 from another inmate."). In *Shorter*, the Sixth Circuit explained that "[f]or the petition to be timely, Petitioner would have to convince this Court that a diligent person in his circumstances would have delayed a full five years in filing his motion for direct appeal" and then found that Petitioner had not shown diligence in discovering his appellate rights. 659 F. App'x at 232.

First, the undersigned notes Petitioner's assertions regarding lack of notice are belied by the record. When Attorney Van Brocklin filed a motion to withdraw and a no merit brief, he sent a copy to Petitioner. *See* Ex. 11, Doc. 7-1, at 21. Contrary to Petitioner's claim that "he was not provided the opportunity at that time to file a *pro se* appellate brief" (Doc. 1, at 4), the appellate court explicitly gave Petitioner this opportunity (Ex. 12, Doc. 7-11, at 25) (giving Petitioner 30 days to file a *pro se* brief "raising any claims of error he chooses"). Petitioner himself acknowledged this opportunity, filing on January 22, 2009, a motion for appointment of counsel and transcripts, and motion for 60 day extension of time to file his brief. (Exs. 13-14, Doc. 7-1, at 26-27). The appellate court granted Petitioner an additional 30 days to file his brief (Ex. 15, Doc. 7-1, at 28), but the docket reflects Petitioner did not do so (Ex. 31, Doc. 7-1, at 103).

Second, even if the undersigned were to suspend disbelief and presume Petitioner was somehow unaware, Petitioner offers no evidence or explanation as to why he then waited over five years before taking further action. *See* Ex. 30, Doc. 7-1, at 95 (motion for transcripts filed July 9, 2015); (Ex. 21, Doc. 7-1, at 53-61) (motion to reopen direct appeal filed February 25, 2016).

8

Because Petitioner has not shown reasonable diligence, the undersigned finds Petitioner cannot show he is entitled to a later start date under § 2244(d)(1)(D). Because Petitioner is not entitled to a later start date, his one-year period for filing a habeas Petition began running November 7, 2009—the day after his conviction became final—and expired one year later, on November 7, 2010, absent tolling.

*Statutory Tolling*

A properly filed post-conviction petition can serve to toll the statute of limitations in habeas cases. 28 U.S.C. § 2244(d)(2). A state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, such as those prescribing the time limits for filing." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). State courts are the final arbiters of whether a state collateral action is considered timely, and thus, properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). A state post-conviction petition rejected by the state court on timeliness grounds is not properly filed and, therefore, it cannot serve as the basis for statutory tolling. *Allen v. Siebert*, 552 U.S. 3, 5 (2007). Once the statute of limitations expires, state collateral review proceedings can no longer serve to avoid the time-bar. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.") (internal quotation and citation omitted).

Statutory tolling does not assist Petitioner in this case. The one year period began on November 7, 2009, and expired uninterrupted one year later on November 7, 2010. Although Petitioner filed post-conviction motions, these were not filed until after November 7, 2010. *See* Ex. 17, Doc. 7-1, at 45 (motion for transcripts filed in July 2015); Ex. 21, Doc. 7-1, at 53-61 (delayed motion to reopen appeal filed in February 2016). Because all of Petitioner's actions occurred after the AEDPA statute of limitations had run, none of them can serve as a basis for

9

statutory tolling. *Vroman*, 346 F.3d at 602; *Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003) ("a motion for state post-conviction review that is filed following the period for seeing habeas relief cannot toll that period because there is no period remaining to toll"). Absent equitable tolling, therefore, the Petition is untimely.

*Equitable Tolling*

A Petitioner who otherwise fails to file an action within the limitations period may still file an action, under the doctrine of equitable tolling, when the petitioner's failure to meet a deadline arose from circumstances beyond his control. *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). A petitioner is entitled to equitable tolling where he "shows: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo* 544 U.S. 409, 418 (2005)). "[E]quitable tolling should be applied sparingly and decided on a case-by-case basis." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011). Petitioner "bears the ultimate burden of persuading the court that he . . . is entitled to equitable tolling." *Id.* For the reasons discussed below, the undersigned Petitioner has not done so here.

Petitioner has not shown an extraordinary circumstance stood in his way, or diligence in pursing his rights. Plaintiff's only ground for relief alleges he was denied his right to due process when the appellate court denied his application to reopen his direct appeal under Ohio Appellate Rule 26(B). Petitioner asserts he "was never informed that [Attorney] King was filing a motion to withdraw as appellate counsel, nor that the motion was granted – nor of the appellate court's decision to affirm the trial court's judgment." (Doc. 1, at 4).

Preliminarily, the undersigned notes Respondent is incorrect in the statement that "[t]he record does not indicate any attorney named Douglas King who was appointed to represent Lewis." (Doc. 7, at 11). As set forth above, the record reflects the trial court initially appointed Attorney

10

Douglas King to represent Petitioner on appeal. (Ex. 30, Doc. 7-1, at 93) (November 5, 2007 docket entry). However, Attorney King was subsequently replaced with Attorney McLaughlin (Ex. 31, Doc. 7-1, at 97) (November 28, 2007 journal entry), who was subsequently replaced with Attorney Van Brocklin (Ex. 10, Doc. 7-1, at 20).

However, the record also reflects Petitioner *was* provided notice multiple times that his appellate attorney[8] had asked to withdraw. *See* Ex. 11, Doc. 7-1, at 21 (certificate of service indicating motion to withdraw was mailed to Petitioner); Ex. 12, Doc. 7-1, at 25 (appellate court entry, mailed to Petitioner, stating: "On December 10, 2008 assigned counsel filed a motion to withdraw . . ." and granting Petitioner 30 days to file a *pro se* brief); Ex. 13-14, Doc. 7-1, at 26-27 (Petitioner's *pro se* motions requesting counsel, transcripts, and an extension of time to file his brief); Ex. 15, Doc. 7-1, at 28 (appellate court entry, dated February 11, 2009, mailed to Petitioner, again noting "[a]ssigned counsel has filed a motion to withdraw . . ." and granting Petitioner an additional 30 days to file his brief).

Even assuming, *arguendo*, that Petitioner was somehow unaware that his attorney had asked to withdraw in 2009, Petitioner offers no explanation for his failure to take any further action until "late 2015". Doc. 1, at 4 ("In late 2015 Petitioner requested from the clerk of courts copies of the appellate court's decisions above and for the first time finally received them."). This is insufficient to show diligence in pursing his rights. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 463 (6th Cir. 2012); *see also McIntosh v. Hudson*, 632 F. Supp. 2d 725, 734 (N.D. Ohio 2009) ("Petitioner did not act to discover any appellate rights for more than two-and-a-half

---

8. In his supporting facts, Petitioner asserts that "no appellate brief was ever filed by King" and "nearly two years later, King filed a motion to withdraw as Petitioner's counsel" that the appellate court "granted on September 22, 2009". (Doc. 1, at 4). The record reflects that the withdrawal Petitioner references, that the appellate court granted, was actually filed by Attorney Van Brocklin, who was Petitioner's attorney of record at the time. *See* Ex. 11, Doc. 7-1, at 21; Ex. 16, Doc. 7-1, at 29-44.

11

years after his conviction. A person in Petitioner's position exercising due diligence would have acted much sooner, seeking out his rights and remedies, rather than waiting for a law clerk, whose identity is not known by the Court, to "[notice] the [he] was never informed of his right to appeal[]'".) (quoting Petitioner's traverse) (alteration in original). In *Keeling*, the Sixth Circuit rejected an argument for equitable tolling based on Petitioner's failure to monitor his case, and his appellate counsel's representations:

> Keeling himself admits that he waited almost three years after the decision in his original appeal to the Ohio Court of Appeals before filing his first *pro se* post-conviction motion. "While this Court has recognized that attorney assurances and the realities of incarceration may justifiably delay a petitioner's request for a case status update, ... this Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half." *Robinson* [*v. Easterling*]*,* 424 F. App'x [439,] 443 [(6th Cir. 2011)]. In *Robinson,* the petitioner requested case updates from his attorney, who failed to provide them, and the petitioner waited eighteen months between his last two update requests. *Id.* at 440–41, 443. This court found that the petitioner failed to exercise the required diligence in pursuing his rights and affirmed the district court decision declining to equitably toll the statute of limitations, even though the petitioner's attorney failed to inform him of the appellate decision for more than one year after it issued. *Id.* at 440–43. Further, we have declined to allow equitable tolling where a petitioner's attorney misled him into believing that his appeal was still pending before the state court because the petitioner failed to diligently monitor the progress of his appeal. *Winkfield v. Bagley,* 66 F. App'x 578, 583–84 (6th Cir. 2003). Similarly, this court has declined to equitably toll the statute of limitations where a petitioner alleged that the state court and his attorney failed to inform him that a decision had been rendered affirming his conviction. *Elliott v. Dewitt,* 10 F. App'x 311, 312–13 (6th Cir. 2001).

673 F.3d at 463. Similarly here, Petitioner has not explained his failure to monitor the status of his case for over five years. This is insufficient to show diligence. Accordingly, the undersigned recommends the Court find Petitioner has not shown reasonable diligence, and therefore he is not entitled to equitable tolling. *See Holland*, 560 U.S. at 653.[9]

---

9. Further, by Petitioner's own admission, he was aware of the appellate court's decision in "late 2015" (Doc. 1, at 4), and yet he did not file his Petition with this Court until over one year later, on March 24, 2017 (Doc. 1, at 7). Thus, he has similarly failed to show diligence in pursuing federal habeas relief.

Moreover, any argument that Petitioner was prevented from timely filing his petition because he is uneducated in the law and lacked access to legal assistance is insufficient to warrant equitable tolling. *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) ("'[T]his court has repeatedly held that 'ignorance of the law alone is not sufficient to warrant equitable tolling.'") (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)).

As such, Petitioner has not shown entitlement to equitable tolling because he has not shown "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing". *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418).

*Actual Innocence*

Actual innocence, if proven, can excuse a statute of limitations bar to review of a petitioner's claims but requires the petitioner to demonstrate that "in light of ... new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *Id.* at 1931. In order to advance a credible actual innocence claim, however, the petitioner must support his allegations with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324.

The Supreme Court has repeatedly counseled that actual innocence is an exception that is rarely granted, and only in the most extraordinary circumstances. *See id.* at 324 (reasoning that, because new reliable evidence will be unavailable "in the vast majority of cases, claims of actual innocence are rarely successful"); *see also McQuiggin*, 133 S. Ct. at 1928 ("We caution, however,

that tenable actual-innocence gateway pleas are rare."); *House v. Bell*, 547 U.S. 518, 538 (2006) ("The *Schlup* standard is demanding and permits review only in the 'extraordinary' case.") (quoting *Schlup*, 513 U.S. at 327).

Petitioner has not alleged innocence to excuse the expiration of the statute of limitations, nor has he provided any "new reliable evidence . . . that was not presented at trial." *Schlup,* 513 U.S. at 324.

Because the Petition is untimely, and Petitioner has not shown any basis for tolling, or actual innocence to excuse the expiration of the statute of limitations, the undersigned recommends the Court grant the Motion to Dismiss (Doc. 7).[10]

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Motion to Dismiss (Doc. 7) be granted.

                                                     s/James R. Knepp II
                                                    United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

---

10. Because the undersigned finds the Petition untimely, it is not necessary to reach Respondent's argument—made only in a footnote—that Petitioner's sole ground for relief is non-cognizable. *See* Doc. 7, at 7 n.2